UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CALVIN LEON TIDWELL,

     Plaintiff,

v.                                       Case No. 5:17cv132-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Calvin Leon Tidwell's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence. The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

ISSUES ON REVIEW

Mr. Tidwell, who will be referred to as claimant, plaintiff, or by name, claims the ALJ erred by: (1) failing to properly reconcile Dr. Jacob's 2016 opinion with the residual functional capacity; and (2) "fail[ing] to include [p]laintiff's moderate limitations in concentration, persistence, or pace in the hypothetical to the vocational expert." (Doc. 14, p. 1).

PROCEDURAL HISTORY

On August 28, 2013, plaintiff protectively filed applications for DIB and SSI, claiming disability beginning July 28, 2012, due to shoulder problems, diabetes, bipolar disorder, back/neck problems, neuropathy, and sciatica. T. 101-02, 114-15.[1] The Commissioner denied the applications initially and on reconsideration. T. 167, 179. The ALJ conducted a hearing on December 10, 2015, and plaintiff amended the alleged disability onset date to July 10, 2013. T. 45, 47. After the hearing, the ALJ found claimant not disabled under the Act. T. 24-37. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

---

[1] The administrative record filed by the Commissioner consists of 10 volumes (docs. 12-2 through 12-11) and has 683 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

2.     If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.     If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[2]

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

<u>FINDINGS OF THE ALJ</u>

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

• Claimant meets the insured status requirements of the Act through March 31, 2014.  T. 26.

• Claimant has not engaged in substantial gainful activity since July 10, 2013, the amended alleged onset date.  T. 26.

• Claimant has the following severe impairments: left shoulder degenerative joint disease, status post multiple surgeries, lumbar spine degenerative disc disease, type 2 diabetes with diabetic neuropathy, and obesity (6' and 295 pounds).  T. 26.

• Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he is limited to doing simple routine tasks, due to moderate limitations in concentration/persistence/pace, which are secondary to pain distractions and not to depression.  Claimant is unable to reach overhead with his left upper extremity and is frequently able to handle, finger, or feel bilaterally.  T. 29.

• Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 35.

• Claimant has not been under a disability, as defined in the Act, from July 10, 2013, through April 13, 2016.  T. 36-37.

## FACT BACKGROUND AND MEDICAL HISTORY

The following recitation of facts is set out in light of the issues raised by claimant. Mr. Tidwell offered testimony as to his health, daily activities, and work history at the December 2015 hearing before the ALJ. T. 47-75. He was born on January 15, 1968, and has a high school education. T. 101, 309. He previously worked as a tractor-trailer truck driver, delivery truck driver, and diesel mechanic. T. 74-75. Plaintiff was laid off in 2009 due to the economy, but at the hearing, stated his conviction for grand theft "probably [had] a little" to do with him not being able to get a job. T. 61, 66.

Plaintiff indicated he can probably stand and walk for a total of a couple of hours in an 8-hour day. T. 67. At one time, he can stand for 10 to 15 minutes and sit for 10 to 15 minutes. T. 67. Plaintiff testified, "I can't sit very long because of the pain. And so I have to stand up for a little bit. Then I can stand for a few minutes and I need to sit[.]" T. 63. Most of his day, however, is spent lying down because of a diabetic ulcer on his toe, severe pain in his feet and legs, and depression. T. 62, 66, 71. He testified the pain gets "to where [he is] crying[]" and with regards to variation in day-to-day pain, two weeks out of the month are bad days. T. 70-72. During the bad days, he does not want to be around anyone and does not want to talk. T. 71. In contrast, on a day when he is not feeling too bad, he "might get up and go over to [his] parents' house and visit with them for a while." T. 72.

Plaintiff takes Gabapentin and Baclofen for pain and muscle relaxation. T. 63. The side effects of Gabapentin include balance issues, disorientation, forgetfulness, and poor short-term memory. T. 73. For over a year, he has used a cane because he finds Gabapentin causes a sudden loss of balance. T. 70. Claimant testified he "can't walk very far—[from the courtroom] out to the parking lot." T. 67. After the hearing, however, the ALJ observed claimant and his parents walk to their car. T. 251. Claimant "walked to the driver's side passenger door (using his cane), opened the door, and tossed his cane into the back seat. He then got into the front seat and drove away." T. 251. Because the ALJ's observations were inconsistent with claimant's testimony, she ordered a post-hearing consultative exam. T. 251.

On January 23, 2016, E. Jacob, M.D., performed the consultative neurological examination of plaintiff. T. 673. Dr. Jacob noted claimant's prescriptions included Gabapentin, Baclofen, and Lexapro. T. 675. Claimant reported constant neck pain that is "made worse by movement of the neck[,]" low back pain that "radiates to both buttocks and back of the thighs, then radiates anteriorly to the legs[,]" difficulty in walking or standing for a long period of time, and weakness and numbness in both hands. T. 674. Dr. Jacob found plaintiff exhibited: (1) loss of range of neck movement; (2) normal higher intellectual functions; (3) "[s]trength in the upper and lower extremities is more or less equal

and normal except dorsiflexion and plantar flexion of the right ankle and foot is 4/5";
(4) positive straight leg raises at 60 degrees bilaterally; (5) a limp; (6) depressed
reflexes in the upper extremities and absent reflexes in the lower extremities; and (7)
"an ulcer over the right big toe which is nonhealing[.]"  T. 675-76.  Dr. Jacob
diagnosed diabetes mellitus with significant signs of peripheral neuropathy and
diabetic foot ulcer on the right side, history of bipolar disorder, hypertension, and
tobacco abuse.  T. 676-77.

On the same day, Dr. Jacob completed a Medical Source Statement.  T. 683.
As to functional limitations, Dr. Jacob concluded plaintiff could sit for 2 hours at a
time; stand for 45 minutes at a time; and walk for 30 minutes at a time.  T. 679.  Dr.
Jacob indicated, in an 8-hour work day, claimant could sit for 8 hours, stand for 2
hours, and walk for 1 hour.  T. 679.  Dr. Jacob based the sitting, standing, and
walking limitations on weakness and sensory loss in plaintiff's legs and the diabetic
ulcer on his right toe.  T. 679.  Dr. Jacob also found medically necessary claimant's
use of the cane to ambulate.  T. 679.

Dr. Jacob concluded plaintiff could lift and carry up to 50 pounds
occasionally, up to 20 pounds frequently, and possibly carry up to 10 pounds
continuously.  T. 678.  Claimant could frequently reach, handle, finger, feel, push,
and pull with both hands, and frequently operate foot controls.  T. 680.  For postural
limitations, Dr. Jacob indicated plaintiff could occasionally climb stairs and ramps,

balance, stoop, kneel, crouch, and crawl, but never climb ladders or scaffolds. T. 681. Additionally, Dr. Jacob concluded claimant could tolerate occasional exposure to moving mechanical parts, occasional or frequent exposure to operating a motor vehicle, but could never tolerate exposure to unprotected heights. T. 682.

Plaintiff also testified about his mental health at the ALJ hearing. Claimant takes Lexapro and Buspar for "moods." T. 57-58. He testified to experiencing problems with depression, stating, "[s]ome days I'm okay—I don't have a problem with being around people. And then other days when my pain is so severe, I don't want to be around anybody. I just want to be left alone." T. 58.

According to the hearing testimony, plaintiff lives alone in an apartment, which is located next door to his parents. T. 54, 63. A typical day is spent "laying on [his] couch watching TV." T. 66. Plaintiff smokes a pack of cigarettes a day and does not exercise. T. 54, 62. He does his own laundry and makes microwavable meals. T. 64. His mother, however, does his cooking and shopping, except when he makes an occasional trip to the store when he is out of cigarettes. T. 54, 64.

Earlier, on July 10, 2013, Greg Sloan, M.D., an examining physician, completed a mental capacity assessment. T. 468. Dr. Sloan indicated plaintiff had moderate limitations in his ability to understand and remember very short and simple instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; accept

instructions and respond appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate precautions. T. 471-73. Dr. Sloan also noted claimant had marked limitations in his ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; and perform at a consistent pace with a standard number and length of rest periods. T. 471-72. Dr. Sloan cited depression and chronic pain as the cause of the limitations. T. 472.

In November 2013 and January 2014, Disability Determination Services ("DDS") examiners reviewed claimant's medical records and concluded plaintiff was able to perform light work. T. 125, 142. On November 6, 2013, a DDS examiner found no limitations in Mr. Tidwell's ability to perform light work. T. 124. By contrast, on January 20, 2014, DDS examiner Bettye Stanley, D.O., determined plaintiff's ability to perform light work was subject to some postural limitations and restrictions in concentrated exposure to hazards. T. 139-40.

On July 13, 2015, Julian A. Salinas, Ph.D., performed a consultative psychological examination. T. 515. Plaintiff reported "social withdrawal, a loss of interest in pleasurable activity, suicidal ideation with no plan or intent, helplessness and hopelessness, sad mood, tearfulness, and low energy and motivation," along with periods of depression. T. 516-17. Dr. Salinas administered a Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV") upon which claimant earned a verbal comprehension score of 89, a perceptual reasoning score of 100, a working

memory score of 111, a processing speed score of 81, and a full-scale IQ score of 94. T. 518. Plaintiff's scores on the WAIS-IV indicate "he performs in the average range of intellectual functioning relative to age peers." T. 518, 520. Dr. Salinas also administered a Wechsler Memory Scale, Fourth Edition ("WMS-IV") upon which claimant's "performance on various memory indices was in the average range when compared to age peers, and generally consistent with his measured intelligence." T. 519-20. Dr. Salinas concluded plaintiff had minor limitations in his ability to interact appropriately with the public, with supervisors, with co-workers, and to respond appropriately to usual work situations and to changes in routine work setting. T. 513. Dr. Salinas cited moderate depression as the cause of the limitations. T. 513.

Kongsak Chantornsaeng, M.D., did not examine claimant, but completed a mental capacity assessment on October 7, 2015. T. 627. Dr. Chantornsaeng's assessment was based upon an evaluation by a social worker, Stephanie Hofrichter; the evaluation does not appear in the record. T. 627. Dr. Chantornsaeng indicated plaintiff had marked or extreme limitations in sustained concentration and persistence, social interaction, and adaption. T. 626-27. Dr. Chantornsaeng cited depressive disorder and depression due to medical condition as the cause of the limitations. T. 626-27.

## ANALYSIS

Mr. Tidwell urges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to reconcile all medical opinion evidence with the RFC. (Doc. 14, p. 13-18). "The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (*citing Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel*, 631 F.3d at 1179 (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *see also Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 732-33 (11th Cir. 2011) (finding that "[w]ithout a clear explanation of the ALJ's treatment of [a medical] opinion [contrary to the findings in the RFC assessment], [the court] cannot determine whether the ALJ's ultimate decision on the merits was rational"). A reviewing court may not ignore the error and proceed to determine whether the decision is supported by substantial evidence. *See Winschel*, 825 F.3d at 1179. The rule articulated in *Winschel* is not consistent with

the Commissioner's position in the instant case, because the ALJ failed to describe why certain limitations in the medical opinions, including at least one opinion accepted by the ALJ, were not included in the RFC.

The ALJ gave "substantial weight" to Dr. Jacob's January 23, 2016, opinion. T. 32. The ALJ specifically noted Dr. Jacob's conclusion that Mr. Tidwell "was able to stand two hours, to sit eight hours, and to walk one hour" and the ALJ thus found Mr. Tidwell was "limited to sedentary work activities due to limitations in standing and walking found by th[e] specialist." T. 32. The ALJ also noted Dr. Jacob's conclusions which limited Mr. Tidwell's postural activities, carrying/lifting activities, and exposure to environmental conditions. T. 32. Nevertheless, none of Dr. Jacob's conclusions regarding these further limitations were included in the RFC. The ALJ failed to explain why she gave substantial weight to only some, but not all, of Dr. Jacob's findings.

Dr. Jacob based the assigned limitations on Mr. Tidwell's weakness and sensory loss in the legs and a diabetic ulcer on the right toe. T. 679. As to functional limitations, Dr. Jacob concluded plaintiff could sit for 2 hours at a time; stand for 45 minutes at a time; and walk for 30 minutes at a time. T. 679. As to physical limitations, Dr. Jacob indicated claimant could frequently reach, handle, finger, feel, push, and pull with both hands, and frequently operate foot controls. T. 680. As to environmental limitations, Dr. Jacob concluded plaintiff could tolerate occasional

exposure to moving mechanical parts, occasional or frequent exposure to operating a motor vehicle, but could never tolerate exposure to unprotected heights. T. 682. In his report, Dr. Jacob also noted Mr. Tidwell required the use of a cane to ambulate and could only travel short distances without it. T. 679.

The ALJ limited Mr. Tidwell to sedentary work "due to limitations in standing and walking" found by Dr. Jacob. T. 32. In Social Security parlance, sedentary work "requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Social Security Ruling 96–9P ("SSR") (S.S.A. 1996). "Occasionally" is defined as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." *Id.* Although the ALJ determined claimant was capable of performing sedentary work because claimant could "stand for two hours, [] sit for eight hours, and [] walk one hour[,]" the ALJ did not discuss Dr. Jacob's additional limitations which limited claimant to standing for 45 minutes at a time and walking for 30 minutes at a time. T. 32, 679. In addition, the ALJ decision was not completely accurate as to Dr. Jacob's opinion when it stated Jacob concluded

claimant could "ambulate without an assistance device[.]" T. 32. In truth, Dr. Jacob's opinion indicated use of a cane was medically necessary except for travelling short distances. T. 679.

In *Dempsey*, the ALJ "explicitly addressed, and gave significant weight" to a medical opinion contained in a Physical Capabilities Evaluation questionnaire. 454 F. App'x at 733. The ALJ discounted a limitation regarding the number of days of work the claimant would miss due to her impairments, but did not mention another limitation, contained in the same questionnaire, regarding the claimant's ability to concentrate. *Id.* The Eleventh Circuit reasoned that "[t]he ALJ erred when he failed to mention, much less consider, [the physician's] opinion of [claimant's] ability to concentrate" because the opinion was "contrary to the ALJ's finding in his RFC assessment that [claimant] had no significant mental limitations." *Id.* The court further reasoned that "[w]hether or not [claimant] has an inability to concentrate is significant because the vocational expert testified that an individual with all of [claimant's] physical limitations whose pain and other symptoms would interfere with the attention and concentration needed to perform simple work tasks would be precluded from performing any work." *Id.* at n.6. Thus, the Eleventh Circuit held that "[o]n remand, the ALJ must explicitly consider and explain the weight accorded to [the physician's] opinion[.]" *Id.* at 733.

Applying the *Dempsey* rationale to the instant case, the ALJ erred when she failed to mention claimant's additional standing and walking limitations. Although the ALJ gave "substantial weight" to Dr. Jacob's opinion, the portion of the opinion which limited claimant to standing for 45 minutes at a time and walking for 30 minutes at a time is just absent in the RFC. T. 32, 679. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . . [however,] [w]ork processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83–10 (S.S.A. 1983). Whether or not claimant has the ability to perform the demands of sedentary work is significant. Yet, no details were provided in the record about the work processes, such as standing and walking requirements, for the specific jobs identified by the vocational expert ("VE"). Further, the ALJ did not address whether the specific jobs identified by the VE could be performed by a person who can only walk for 30 minutes at a time and stand for 45 minutes at a time. It is unclear whether the ALJ's decision is supported by substantial evidence because the additional, yet excluded, limitations in Dr. Jacob's opinion may be vocationally significant.

The Commissioner contends the ALJ sufficiently addressed the limitations identified by Dr. Jacob when she stated, "[t]he undersigned does not find the claimant has restrictions in doing postural activities or in exposure to hazards, since

the claimant did not testify to any problems in these areas." T. 34. The Commissioner also claims "the ALJ addressed [p]laintiff's ability to perform the requirements of sedentary work throughout her decision." (Doc. 15, p. 7) (citation omitted). As the Commissioner correctly noted, sedentary work does not usually require performance of postural activities or exposure to environmental hazards. *See* SSR 96–9P (S.S.A. 1996). Nevertheless, Dr. Jacob's standing and walking limitations, which are consistent with Mr. Tidwell's hearing testimony, may be vocationally significant and are not addressed by the ALJ. T. 62.

Thus, the ALJ erred when she failed to address all of the standing and walking limitations in Dr. Jacob's favorably weighted opinion. The ALJ's decision is not supported by substantial evidence and on remand, the ALJ should explicitly consider and explain the weight given to each limitation in Dr. Jacob's opinion.

Mr. Tidwell also argues the ALJ's hypothetical to the VE did not account for his moderate limitations in maintaining concentration, persistence, or pace. (Doc. 14, p. 18-24). "An ALJ must account for a claimant's limitations in concentration, persistence, or pace in a hypothetical question to the VE. An ALJ may account for these limitations by limiting the hypothetical to unskilled work 'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace.'" *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712 (11th Cir. 2015) (*quoting Winschel,*

631 F.3d at 1180). In addition, hypothetical questions may implicitly account for limitations in concentration, persistence, and pace. *See Winschel*, 631 F.3d at 1180-81 (citing examples); *see also Jarrett v. Comm'r Soc. Sec.*, 422 F. App'x 869, 871 (11th Cir. 2011) (holding hypothetical indicating individual could "understand, remember [and] carry-out simple . . . tasks and concentrate for brief periods of time" adequately accounted for finding of moderate difficulties in concentration, persistence, and pace).

Here, the ALJ determined claimant's moderate limitations in maintaining concentration, persistence, and pace were "secondary to pain distractions and not to depression." T. 29. Although the ALJ did not expressly include these limitations in the hypothetical posed to the VE, the ALJ's RFC determination and hypothetical limited claimant to simple, routine tasks. T. 29, 75. Thus, by limiting plaintiff to simple, routine tasks, the ALJ sufficiently accounted for plaintiff's "moderate difficulties in concentration from a physical pain point of view." T. 33.

Substantial evidence supports the determination that claimant could perform simple, routine tasks despite his moderate limitations in concentration, persistence, and pace. During a consultative psychological exam performed in July 2015, plaintiff was able to sustain enough attention to complete a WAIS-IV with Dr. Salinas. T. 28. Claimant reported he drove himself to the appointment. T. 517. During the exam, plaintiff was "able to spell the word 'world' and he correctly

sequenced 5 of 5 letters while spelling backwards." T. 518. Although claimant reported having difficulty with memory for recent and remote events, he correctly "repeated a list of three unrelated objects and recalled all three following a brief delay with a distractive task." T. 518. Claimant's scores on the WAIS-IV revealed his ability to sustain attention, concentrate, and exert mental control was in the high average range. T. 518. Similarly, claimant's scores on the WMS-IV revealed his performance on various memory indices was in the average range. T. 520. Dr. Salinas concluded plaintiff did not have any deficits in his ability to understand, remember, and carry out instructions. T. 512. Dr. Salinas' conclusions were supported by opinions of DDS examiners, who found plaintiff had no restriction of activities of daily living and only minor difficulties in maintaining concentration, persistence, or pace. T. 121, 137.

The ALJ's determination that the opinion evidence of Drs. Sloan and Chantornsaeng would be afforded less weight is supported by substantial evidence. T. 34. Dr. Sloan concluded claimant had marked limitations in his ability to understand and remember detailed instructions and maintain attention and concentration for extended periods. T. 471. The ALJ afforded this opinion little weight because Dr. Sloan is not a mental health specialist and his findings were inconsistent with the medical record. T. 34; *see* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical

issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion.").

Similarly, Dr. Chantornsaeng concluded claimant had marked or extreme limitations in sustained concentration and persistence, social interaction, and adaption. T. 526-27. The ALJ assigned this opinion no weight because Dr. Chantornsaeng is a non-examining physician who did not provide any objective medical support for his conclusions and his findings were inconsistent with the medical record. T. 35, 627; *see* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). In sum, the ALJ's decision to afford less weight to the opinions of Drs. Sloan and Chantornsaeng is supported by substantial evidence.

Despite Mr. Tidwell's moderate limitations in concentration, persistence, and pace, the medical and testimonial evidence supports the determination that claimant could still perform simple, routine tasks. Thus, the RFC determination, in this aspect, and the ALJ's hypothetical to the VE, which limited claimant to simple, routine tasks, adequately accounted for Mr. Tidwell's moderate limitations in concentration, persistence, and pace.

Accordingly, it is ORDERED:

1.      The Commissioner's decision is set aside and the matter REMANDED

for further proceedings consistent with this order.

2.      The clerk is directed to enter judgment in favor of plaintiff and close

the file.

DONE AND ORDERED this 16th day of July, 2018.


                          */s/ Charles J. Kahn, Jr.*
                          **CHARLES J. KAHN, JR.**
                          **UNITED STATES MAGISTRATE JUDGE**